IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| David A. Smith<br><br>-against-<br><br>Douglas J. Burgum,<br>Secretary,<br>Department of the Interior<br>(National Park Service)<br>Agency | **Complaint for a Civil Case**<br><br>Civil No. _____<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial:   X  Yes   ☐ No<br>           *(check one)* |

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

| | |
|---|---|
| Name | David A. Smith |
| Street Address | 328 Gilbert Farm Road |
| City and County | Bar Harbor, Hancock County |
| State and Zip Code | Maine 04609 |
| Telephone Number | (207) 266-6079 |
| E-mail Address | iamrangerdave@gmail.com |

B. **The Defendant(s)**

| | |
|---|---|
| Name | Douglas J. Burgum |
| Job or Title | Secretary, US Department of Interior (National Park Service) Agency |
| Street Address | 1849 C Street, NW |
| City and County | Washington, DC |
| State and Zip Code | 20240 |
| Telephone Number | (202) 208-3100 |
| E-mail Address | UNK |

II. **Basis for Jurisdiction**

What is the basis for federal court jurisdiction? *(check all that apply)*

　X　Federal question　　　　☐ Diversity of citizenship

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Equal Employment Opportunity Act (Title VII) 42 USC 2000E

Age Discrimination in Employment Act 29 USC 621-634

_____

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

　　N/A

### III. Statement of Claim

1. The Plaintiff's right to equal opportunity of employment was violated because of his Native American Race - first occurrence June 2018, second occurrence April 14, 2021 (complaint filed 4/20/21), multiple occurrences from the 4/20/21 initial complaint filing date and continuing after the second complaint filing date of February 2, 2022. Acadia National Park Hiring Officials (specifically Steve Allison, Road Supervisor, and Keith Johnston, Chief of Maintenance), conspired to manipulate the hiring process by intentionally using the agency's non-discriminatory reasons as a pretext to discriminate against the more experienced and older (over 40) Native American plaintiff, to ensure he never got one of the highly sought after jobs, by filling the two vacant positions, with two younger (under 40) white men, of less experience. The following agency's non-discriminatory reasons were given: (1) Non-competitive hiring authority being used by the hiring officials to hire the young white men without competition, (2) The existing position the plaintiff wanted to apply for was suddenly removed in a re-organization scheme after the plaintiff's first complaint was filed (hiring official retaliation), (3) The young white men were placed into the "new" vacant positions as "point men" by the hiring officials and did not offer that same special privilege of a detail experience to the plaintiff, (4) The hiring officials cancel the vacancy announcement for the two newly reorganized positions (using an HR rule) realizing that the plaintiff is one of the only two people qualified for the two new positions. The hiring officials offered special treatment to their two white candidates on how to apply for the vacant positions, how to interview for the positions and allowed them to take supervisory training (opportunities not offered to the plaintiff). The hiring officials manipulated the 3-person interview panel so that it was in favor of the two chosen young white candidates and against the plaintiff. Witnesses heard road supervision state that they were "not going to have fucking Indians working" for maintenance, call the plaintiff a "good looking Indian woman squaw" and "there is no way that Ranger will ever work for maintenance." A witness that was afraid to be discriminated against by road supervision (hid his Native American Heritage), stated that he believed that the hiring process for the "new" positions was "rigged" in favor of the two white men, by the hiring officials, before the positions were announced. Lastly, former road supervisor Terry Blanchard displayed intimidation and harassment tactics about the complaint, toward the plaintiff at his residence. Blanchard was fired in 2017 for racial discrimination against his Native American employee at Acadia (plaintiff's second witness). Terry Blanchard had been witnessed stating that we "were useless Indians" and that "if anyone gets involved, we'll kill them and their whole family" (including the plaintiff). Acts of vandalism at work and home occurred to the plaintiff's property during this time period. The plaintiff has five witnesses.

2. The plaintiff's right for equal employment opportunity was also violated under the Age Discrimination in Employment Act because he witnessed the road supervisor, Steve Allison, state that he was "reorganizing" the road crew structure so "that these (two) young guys (under the age of 40) have a chance" with a career ladder, using chilling conduct to relay that he did not want the older (over 40) plaintiff to apply for either of the two new jobs. The plaintiff (over the age of 40) and two other road maintenance employees (over 40 with Native American Heritage) witnessed at how open the hiring official was about not wanting the older (over 40) and more experienced plaintiff from getting one these two highly sought after new jobs. The actions of the hiring officials (Steve Allison, Road Supervisor and Keith Johnston, Chief of Maintenance) explicitly only allowed the young (under 40) white men, the special privileges of unofficially detailing into the new positions before the positions were ever announced, training for the new positions and ordered the two older (over 40) road maintenance employees (with Native American Heritage) to train their future supervisors how to do the job. The plaintiff was never offered the same special privileges afforded the two younger white men (under the age of 40) of a detail into either of these two vacant positions, the "on the job" training given, the supervisory training, or the job application and interview training. A witness (over the age of 40 with Native American Heritage) believed that the hiring process was "rigged" in favor of hiring the two young (under 40) white men, well before the position announcements were ever posted for competitive hiring. The plaintiff brought over three decades of experience to the vacant positions, while the two young white men had only been permanent employees for a short time (two years in one case).

….

### IV. Relief

The Plaintiff is seeking the full statutory amount of $300,000 in relief. Damages suffered in the amount of $50,000 have already occurred, with a home equity loan to finance the nearly 5 year legal process, stress management therapy, medical expenses caused by the continued stress of litigation (dental expenses from a broken tooth, panic attack with high blood pressure and heart attack symptoms, double hernia surgery from bowel distress, sudden onset of type 2 diabetes from excessive stress cortisol, chiropractor adjustments for back and neck pain stress) and the costs of fixing/preventing the vandalism to the plaintiff's property from retaliation at home and at the place of employment. Furthermore, the plaintiff's mandatory retirement at age 57 (within a year and a half) is tantamount to the constructive dismissal (retaliation) of the plaintiff from any future employment opportunities at road maintenance, in Acadia National Park. This prevents the plaintiff from continuing to serve Acadia National Park until age 65 (traditional retirement age), causing him to have lost at least 8 years of continued salary. The $58,000 a year maintenance salary (lost over 8 years), plus lost benefits (which include matching retirement funds and health insurance), far exceeds the statutory limit of $300,000. The plaintiff will have life long medical costs associated with the type 2 diabetes diagnosis and permanently severed friendships due to conflicted work place trust relationships.

### V. Closing

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: February 26, 2026.

Signature of Plaintiff    _[signature]_

Printed Name of Plaintiff    David A. Smith