**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

DAVID A. SMITH,

      Plaintiff,

v.

      Case No. 1:26-cv-105-JAW

DOUGLAS J. BURGUM, in his official
capacity as Secretary for DEPARTMENT OF
INTERIOR, and JESSICA BOWRON, in her
official capacity as Acting Director of
NATIONAL PARK SERVICE,

      Defendants.

**AMENDED COMPLAINT FOR WORKPLACE DISCRIMINATION IN THE FEDERAL
GOVERNMENT AND DEMAND FOR JURY TRIAL**

Plaintiff, DAVID A. SMITH, (Plaintiff), complains and alleges as follows:

## I.   JURISDICTION

1.      This case is brought pursuant to the Civil Rights Act of 1964 as codified in  42 USC §§ 2000e to 2000e-17 for violation of the Plaintiff's rights against employment discrimination on the basis of Race (Native American), prior protected Equal Employment Opportunity activity (reprisal), and pursuant to 29 USC § 621 *et seq.* in violation of the Age Discrimination in Employment Act (aka ADEA).

Subject matter jurisdiction is founded on Title 28 U.S.C. § 1331 and § 1346.  Further, Defendants have waived sovereign immunity for claims of this nature pursuant to 5 USC § 702.

## II.   VENUE

2.      Defendant National Park Service owns and/or operates and maintains approximately 50,000 acres of national parks, historic landmarks, monuments, sites and preserves (referred to as

"units") which are located throughout the entire 50 states, the District of Columbia and the Commonwealth territories of the United States.

3.      One such unit located along the Atlantic coastline in the state of Maine is named Acadia National Park.  A substantial portion of Defendants' acts and omissions giving rise to Plaintiff's claims of economic and non-economic injuries arose in the state of Maine and but for the Defendants' unlawful actions Plaintiff would remain otherwise employed by Defendants. Therefore, venue is proper in the District of Maine pursuant to 42 USC § 2000e-(f)(3), 28 USC § 391(b)(2) and 28 USC § 1391(e).

### III.   PARTIES

4.      Plaintiff is an adult citizen of the United States and a former employee of the National Park Service, a component of the Department of Interior, and at all relevant times herein, encumbering the position of law enforcement ranger (series GS-0025-09/10)[1] assigned to Acadia National Park.

5.      Plaintiff's race is Native American.

6.      At all relevant times which give rise to Plaintiff's three (3) claims for relief herein, Plaintiff was over forty (40) years of age.

7.      Plaintiff's residence is 328 Gilbert Farm Road Bar Harbor, Maine 04609.

8.      Defendant Douglas J. Burgum is the Secretary of the Department of Interior and cabinet head over the U.S. Department of Interior, and has his office situated at 1849 C Street, NW Washington, D.C. and is sued in his official capacity only.

---

[1] At the time of hire, Plaintiff was issued a Type 2 law enforcement commission.  In August 2001 Plaintiff was issued a Type 1 law enforcement commission, which is a primary covered law enforcement position. See 5 USC § 8401(17).

9.      At all times referenced herein, Department of Interior, is an executive department and "agency" within the meaning of Title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq*) and 5 USC § 101, which maintains its principal office in the District of Columbia.

10.     Defendant Jessica Bowron is the Acting Director of the National Park Service and maintains her principal address in the District of Columbia and the National Park Service is an executive agency within the meaning of 5 USC § 105.  Acting Director Jessica Bowron is sued in her official capacity only.

11.     Defendant National Park Service is a subordinate component of Defendant Department of Interior pursuant to 28 C.F.R. § 0.1.  Defendant National Park Service oversees and maintains approximately 433 units around the United States of America, including in the state of Maine.

12.     At the time of the acts of alleged discrimination by Defendants the Plaintiff was an employee of the federal Government as that term is defined in 5 USC § 2105(a) and 42 USC § 2000e(f), employed in the competitive service, as that term is defined in 5 USC § 2103(a)(1).

13.     On April 13, 1998 Plaintiff entered on permanent duty with Defendant National Park Service as a law enforcement ranger (GS-0025) and his duty station was Acadia National Park.

## IV.  BACKROUND HISTORY OF PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS

14.     In or about September of 2000 Plaintiff reported to the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia in order to begin a 12-week training academy for Defendant National Park Service (NPS) in order for Plaintiff to receive his law enforcement commission as a law enforcement ranger for NPS.

15.     Plaintiff is a Native American and descends from the Abanaki tribe.  For most of his adult

life Plaintiff has worn his hair to below shoulder level, usually reaching to the length of his scapula.

16.    In Abanaki spiritual tradition a male's length of hair symbolizes bravery and one's spiritual connectivity to their Native American heritage.

17.    The Defendants' Superintendent overseeing FLETC training in the fall of 2000 was Patrick Henry (Superintendent Henry) and upon observing Plaintiff's "long hair" he directed Plaintiff to either cut his hair or to be turned back to his post of duty at Acadia National Park.

18.    As a result of the action of Superintendent Henry the Plaintiff's attendance at the fall FLETC class in 2000 was curtailed by Defendants and Plaintiff filed a request for a reasonable religious accommodation (to Defendants' grooming standards for FLETC) through Defendants' Equal Employment Opportunity (EEO) component.

19.    Following an interactive process with Defendants' EEO component, Plaintiff was ultimately granted the religious reasonable accommodation and did not have to cut his hair in contravention of his faith and heritage as an Abanaki.

20.    In about March of 2001 Plaintiff reported to the FLETC for the second occasion.

21.    In August of 2021 Plaintiff successfully completed FLETC training academy and he was awarded a Type 1 law enforcement commission, which he retained throughout his career with Defendants.

22.    Historically, from December 1st of each fall into March 30th of the following spring attendance by visitors to Acadia National Park (Acadia) plummets and it is during the winter season where snow removal, felling of timber, and roads maintenance is often in need of any qualified NPS personnel, regardless of position description or working title to assist the full-time maintenance workers.

23.     Since at least 2017 until 2025 Plaintiff would seasonally perform work in varying positions that fall under the Roads Maintenance Division.  Some of these positions had working titles such as "general laborer", "engineering equipment operator" (which required no less than a Class B commercial driver license), "arborist" (felling of tree limbs) and the non-Roads Maintenance workers were often referred to as the "winter cutting crew".

24.     From approximately 2020 until calendar year 2026 the Acadia Roads Maintenance Supervisor was Steven Allison (Supervisor Allison)[2], a Caucasian over forty (40) years of age, and the responsible management official for selections of Acadia personnel to work under the Roads Maintenance Division.

25.     During 2017 up to and including 2022 Plaintiff informed multiple employees from the Roads Maintenance Division, including Supervisor Allison, of his interest in eventually transitioning from his law enforcement position at Acadia to a position in the Roads Maintenance Division.  In fact, Plaintiff took affirmative steps to obtain the certification to work as an arborist and he shared this information with Roads Maintenance personnel.

26.     The motivation for Plaintiff to leave the Park Ranger Division at Acadia for the Roads Maintenance Division at a future date was due to the fact that Plaintiff's law enforcement ranger position was subject to a mandatory retirement age of 57-year, pursuant to Congressional mandate in 5 USC § 3307(a) and Plaintiff had economic need to work beyond his 57th year.

27.     In about January of 2021 Supervisor Allison advised the Winter Cutting Crew that in the spring of the same year, Roads Maintenance Division would be announcing three (3) new positions under Roads Maintenance Division at Acadia to be filled through a competitive selection process.

---

[2] Supervisor Allison's occupational position was actually Engineering (sic) Equipment Operator Supervisor. However, his working title at Acadia was Roads Maintenance Division Supervisor and the latter title is used in this pleading.

28.     On April 14, 2021, Plaintiff learned that the three aforementioned positions: Arborist, Carriage Roads Work Leader, and Roads Work Leader[3] were being filled respectively by Reno Liimantanen (Caucasian under 40 years of age, with no prior EEO activity), Chris Cippolone (Caucasian under 40 years of age, with no prior EEO activity) and Jake MacCamick (Caucasian under 40 years of age, with no prior EEO activity).

29.      On this same date Plaintiff discovered that Supervisor Allison had not made any competitive selection to these positions but had simply detailed the three individuals who are not members of any of Plaintiff's protected categories (Native American, over 40 years of age, prior EEO activity) into the three Roads Maintenance positions.

## V.    EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

30.     Paragraphs 1 through 30 are incorporated by reference herein as though fully set forth herein.

31.     Plaintiff was discriminated against by Supervisor Allison because of his race (Native American), reprisal (prior EEO activity from 2000) and age (over 40 years of age) by taking steps which prevented Plaintiff from being considered for competitive selection for any of the three (3) positions under the Roads Maintenance Division.

32.     On no later than April 20, 2021 Plaintiff initiated EEO counseling with Defendants' EEO component.  After informal counseling was completed, on July 8, 2021 Defendants issued a Notice of Right to File a formal complaint of discrimination to Plaintiff.

33.     On July 20, 2021 Plaintiff filed a formal complaint of discrimination against Defendants

---

[3] It needs pointing out that the official occupational titles are: for arborist, "Arborist Lead" and for Carriage Roads Work Leader and Roads Work Leader, "Engineering Equipment Operator".  However, in this pleading the work titles are relied upon to avoid confusion.

because of Plaintiff's non-selection to any of the three Maintenance Division positions identified in paragraph 28, above.  In this July 2021 EEO complaint Plaintiff identified Supervisor Allison as Defendants' responsible management official for this challenged personnel action (hereinafter referred to as the July 2021 EEO complaint).

34.     In 2021 Defendants conducted a formal investigation into Plaintiff's allegations of discrimination which included taking of sworn interrogatories of witnesses (employees of Defendants), to include responsible management official: Supervisor Allison[4].

35.     In his December 11, 2021 sworn interrogatory Supervisor Allison indicated, *inter alia*, that he had been employed by the NPS for 27 years, that he had known Plaintiff almost his entire career but denied knowing that Plaintiff was Native American until Plaintiff initiated an EEO complaint stemming from Plaintiff's 2021 "non-selection" claim and until this claim Supervisor Allison denied ever knowing that Plaintiff had engaged in any prior EEO activity.

36.     At the end of calendar year 2021 a vacancy announcement was advertised for two (2) positions of Engineering Equipment Operator Leader for Acadia under the Roads Maintenance Division with an open and close window period from January 6, 2021, to January 26, 2021, under Job announcement Number NE-1611-ACAD-22-11310532-MP.

37.     Both positions were advertised (in the job announcement) to be competitive vacancies for career conditional appointments and internal to the "agency" (i.e. Department of the Interior) and position duties read as follows:

> Provides leadership and works alongside crew maintaining paved and unpaved road systems. Operates full range of track and wheel mounted engineering equipment, assisting with maintenance and repair. Operates and leads operation of small equipment and hand tools. Trains lower graded employees in use and care of equipment.

---

[4] In order to contradistinguish this July 2021 challenged personnel action from Plaintiff's EEO claim due to his curtailment from FLETC in 2000, this prior "non-selection" claim by Plaintiff is referred to herein as "July 2021 EEO complaint".  Even though Plaintiff had prior protected EEO activity while at FLETC training in 2000 due Plaintiff's hair length.

37.     The NE-1611-ACAD-22-11310532-MP announcement had several conditions and/or limitations in order for a candidate to be considered for selection.  One condition was that the incumbent must "possess and maintain a Class B Commercial Driver License" and it restricted eligible candidates to "ALL WITHIN THE LOCAL COMMUTING DISTANCE OF BAR HARBORE, MAINE".

38.     At the time that NE-1611-ACAD-22-11310532-MP was disseminated Plaintiff held a Class B commercial driver license, lived in Bar Harbor, Maine and held all of the knowledge, skills and abilities to fill the position of Engineering Equipment Operator Leader.

39.     On January 24, 2022 Plaintiff timely submitted his application for selection for either of the two vacancies to USAJOBS.gov.

40.     On February 1, 2022 Plaintiff received an email from usastaffingoffice@opm.gov at 11:21 a.m. which indicated that Plaintiff had been deemed eligible for the positions under NE-1611-ACAD-22-11310532-MP.

41.     On February 1, 2022 Acadia Human Resources Specialist Tammy Goodwin sent an email to Plaintiff at 11:59 a.m. informing him that Defendants' hiring manager made a decision to not fill either position but that the positions would be readvertised with a wider (sic) area of consideration.

42.      On February 3, 2022 Plaintiff emailed Supervisor Allison as the hiring manager to ask him why NE-1611-ACAD-22-11310532-MP had been canceled when the two vacancies had identified 2 qualified candidates, including Plaintiff, who were referred for his consideration.

43.     Supervisor Allison never sent a reply email to Plaintiff's February 3, 2022 email inquiring

into why NE-1611-ACAD-22-11310532-MP had been canceled when the two vacancies had identified 2 qualified candidates.

44.    Supervisor Allison's decision to cancel the NE-1611-ACAD-22-11310532-MP selection process and to reannounce the two (2) positions to a broader pool of applicants was motivated by discrimination against Plaintiff because of his race, age and reprisal due to Plaintiff's July 2021 claim of discrimination directed at Supervisor Allison.

45.    On March 2, 2022 Plaintiff timely initiated EEO counseling with Defendants EEO component.  On May 12, 2022 Plaintiff received a Notice of his Right to File a formal complaint of discrimination.

46.    On May 20, 2022 Defendants acknowledged receipt of Plaintiff's formal complaint of discrimination as a result of his non-selection under NE-1611-ACAD-22-11310532-MP. Hereinafter referred to as "current claims in this action"[5].

47.    In 2022 Defendants conducted a formal investigation into Plaintiff's allegations of discrimination which included taking of sworn interrogatories of witnesses (employees of Defendants), to include responsible management official: Supervisor Allison.

48.    At the conclusion of Defendants' investigation into Plaintiff's July 2021 EEO complaint Plaintiff timely filed a request for a hearing of his claims before the Equal Employment Opportunity Commission (EEOC).

49.    At the conclusion of Defendants' investigation into Plaintiff's current claims in this action, Plaintiff was issued a notice of rights and on September 22, 2022 Plaintiff timely filed a request for a hearing on the current claims before the EEOC.

---

[5] Plaintiff hereby withdraws his substantive claims of discrimination due to his "non-selection" in the July 2021 EEO complaint and only intends to introduce evidence on this prior personnel action as background information.  Only Plaintiff's claims of discrimination for non-selection under NE-1611-ACAD-22-11310532-MP are being pursued in this cause of action.

50.     During the case processing before the EEOC the assigned administrative judge combined the July 2021 EEO complaint with the current claims in this action.  On July 7, 2023 Defendants filed a motion for summary judgment (MSJ) on all of Plaintiff's EEO claims against Defendants. Plaintiff submitted his opposition to Defendants MSJ.

51.     On April 23, 2024 the EEOC granted Defendants' MSJ, dismissing Plaintiff's claims of discrimination.  On June 5, 2024 Defendants issued a Final Agency Order (FAO) which fully implemented the recommended decision by the EEOC.

52.     On July 5, 2025, Plaintiff appealed Defendants' Final Agency Order to the EEOC Office of Federal Operations (OFO).  On December 5, 2025, OFO sustained the appeal which rendered a finding of non-discrimination for Plaintiff's claims.

53.     The OFO December 5, 2025 appeal decision advised Plaintiff that he had a right to file a civil action in the appropriate United States District Court within ninety (90) days of Plaintiff's receipt of their appeal decision.

54.     On February 27, 2026 Plaintiff filed a "Complaint for a Civil Case" in United States District Court for the District of Maine (ECF#1), which was issued civil case number 1:26-cv-00105.

55.     Plaintiff never served ECF#1, nor any summons on either of the above-named Defendants in the action, nor the Attorney General, nor the United States Attorney for the District of Maine.

56.     As a matter of right Plaintiff is amending his initial filing captioned Complaint for a Civil Case with the instant pleading.

**VI.    CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**Race-based Discrimination**

(Title VII, 42 USC § 2000e-2(a)(1)and(2)

57.      Paragraphs 1 through 56 are incorporated by reference herein as though fully set forth

herein.

58.     Defendants discriminated against Plaintiff based on his race being Native American when he was not selected for the position of Engineering Equipment Operator Lead on February 1, 2022.

59.     Defendants intentionally and unlawfully denied Plaintiff the Engineering Equipment Operator Lead position even though Plaintiff made it on the list of best qualified of candidates for the vacancy due to his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1) and (2).

60.     As a result of Defendants' unlawful actions, the Plaintiff has suffered economic and non-economic damages, as well as emotional pain and suffering.

61.     Plaintiff has exhausted his administrative remedies prior to the commencement of the current cause of action.

**SECOND CLAIM FOR RELIEF**
**Retaliation Discrimination**

(Title VII, 42 USC § 2000e-3(a)

62.      Paragraphs 1 through 61 are incorporated by reference herein as though fully set forth herein.

63.     Defendants discriminated against Plaintiff due to his prior EEO activity when he was not selected for the position of Engineering Equipment Operator Lead on February 1, 2022.

64.     Defendants intentionally and unlawfully denied Plaintiff the Engineering Equipment Operator Lead position even though Plaintiff made it on the list of best qualified of candidates for the vacancy due to his prior EEO activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3(a).

65.     As a result of Defendants' unlawful actions, the Plaintiff has suffered economic and non-economic damages, as well as emotional pain and suffering.

66.     Plaintiff has exhausted his administrative remedies prior to the commencement of the current cause of action.

**THIRD CLAIM FOR RELIEF**
**Age Discrimination**
(29 U.S.C. § 621 *et seq.*)

67.      Paragraphs 1 through 66 are incorporated by reference herein as though fully set forth herein.

68.     Defendants discriminated against Plaintiff because he was over 40 years of age at the time that he was not selected for the position of Engineering Equipment Operator Lead on February 1, 2022.

69.     Defendants intentionally and unlawfully denied Plaintiff the Engineering Equipment Operator Lead position even though Plaintiff made it on the list of best qualified of candidates for the vacancy because he was over 40 years of age in violation of Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*.

70.     As a result of Defendants' unlawful actions, the Plaintiff has suffered economic and non-economic damages, as well as emotional pain and suffering.

71.     Plaintiff has exhausted his administrative remedies prior to the commencement of the current cause of action.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff makes the following demand and prays as follows:

a)    Plaintiff respectfully demands a trial by jury and that process be issued and served as provided by law, requiring Defendants to appear and answer or face judgment;

b)    Enjoin Defendants from engaging in such illegal conduct.

c)    Retroactive promotion of Plaintiff to the position of Engineering Equipment Operator Lead with the National Park Service at Acadia National Park retroactive to the close of the vacancy announcement period for position NE-1611-ACAD-22-11310532-MP;

d)    For pecuniary damages, including back wages, with interest, under the Back Pay Act 5 U.S.C. § 5596(b)(ii) and front pay as an equitable remedy under Title VII make whole provisions, 42 U.S.C § 2000e-5(g);

e)    That Plaintiff have all accrued leave reinstated and an award of leave he would otherwise have accrued but for the unlawful discriminatory actions of Defendants;

f)    For an award of compensatory and special damages against Defendants in an amount to be proven at trial;

g)    For an award of costs as well as reasonable attorney fees pursuant to Title VII make whole provisions, 42 U.S.C § 2000e-5(g), and/or under the Back Pay Act, 5 U.S.C. § 504 or pursuant to the Equal Access to Justice Act (EAJA) 28 U.S.C. § 2412, 42 U.S.C. § 12205.

h)    Pre-judgment interest and post-judgment interest;

i)    Any other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

## VIII.   FRCP   (Rule) 11 CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I hereby certify that to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing the law; (3) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

Dated: May 20, 2026

/s/ Glenn Israel
Glenn Israel, Esq.

Bernstein Shur
100 Middle Street / P. O. Box 9729
Portland, ME 04104-5029
(207) 774-1200
gisrael@bernsteinshur.com

*Counsel for Plaintiff*
*David A. Smith*

/s/ Denis McAllister
Denis P. McAllister, Esq.
*Awaiting pro hac vice admission as Counsel for Plaintiff*
(NYS Bar#2508182)
70 Glen Street, Suite 395
Glen Cove, New York 11542
(516) 816-6644
kogid67@aol.com